IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

AMIR JAMEL KHAN,

Plaintiff,

v.

LOGEN LATHROP,

Defendant.

OPINION and ORDER

19-cv-979-jdp

---

Pro se plaintiff Amir J. Khan contended that defendant correctional sergeant Logen Lathrop disregarded Khan's threats to harm himself, allowing him to overdose on medication. I denied Lathrop's motion for summary judgment on Khan's Eighth Amendment claim against him. Dkt. 89. The parties then stipulated to dismissal of the case before trial. Dkt. 118.

This order addresses the question of whether the court should impose sanctions against Lathrop's counsel, attorneys from the Wisconsin Department of Justice.

Earlier in the case, Khan attempted to add claims against Wisconsin Secure Program Facility Director Mark Kartman for destroying video evidence of defendants' interactions with him. I did not allow Khan to proceed on claims against Kartman, but I stated that I could consider whether Khan would be entitled to sanctions or an inference that the recording contained evidence supporting his claims. *See* Dkt. 62, at 2–3 (citing *Bracey v. Grondin*, 712 F.3d 1012, 1019–20 (7th Cir. 2013) (bad-faith destruction of video surveillance to hide adverse information could support sanctions or inference that recording contained evidence supporting plaintiff's claim)); *see also* Fed. R. Civ. P. 37(e) (court may sanction party that intentionally fails to preserve electronically stored information to deprive opponent of the

information's use). I directed the parties to address this issue in supplemental summary judgment briefing. Dkt. 62, at 2–3.

I ultimately concluded that a hearing on the issue of sanctions was necessary because defendants' briefing on this issue did not fully explain how officials preserved footage from a vestibule camera while failing to preserve the hallway video. Dkt. 89, at 9–10. In particular, Kartman noted that Khan made two requests for preservation of video evidence: Kartman rejected Khan's first request—made about a week after the incident—for being too vague. *Id.* at 8–9. Kartman then stated that Khan didn't make his second request for preservation until four months later. In his declaration, Kartman stated that he preserved the vestibule video because of that belated request. That statement didn't make sense given that Kartman had responded to Khan's second request by stating that "[t]he vestibule video was previously preserved. The range video is no longer available." *Id.* at 9. It was also unclear why the hallway video wasn't preserved along with the vestibule video.

I set the matter for a hearing. The day before that hearing, Lathrop's counsel submitted an amended declaration from Kartman. Dkt. 96. Kartman said that his recollection of events was refreshed after he recovered another request for preservation by Khan: this request was stored in a paper file separate from the electronic files Kartman consulted when preparing his initial declaration. This newly discovered request, made three days after Khan's first request, included more specifics about the time and location of the video sought to be preserved. Kartman and a supervisor responded to that request by preserving the vestibule video, but by then the hallway video had been recorded over and was no longer available.

At the hearing, I concluded that there was no evidence that the hallway video was destroyed in bad faith, so there was no basis for sanctioning Lathrop by issuing default

judgment against him or granting an adverse-inference instruction against him. But I also noted that the court would not have needed to hold the hearing had counsel provided the court all the relevant information when I asked for it the first time around. I directed Khan to suggest another remedy, and I granted his motion for sanctions against counsel in two respects. First, I concluded that Khan was entitled to whatever expenses he incurred in preparing his motions for spoliation sanctions, and filings associated with those motions. Dkt. 115, at 4. I directed Khan to submit an accounting of those expenses. But Khan did not do so, so I will not order counsel to pay Khan his costs.

Second, I noted that the minimal amount of expense that Khan would have incurred to litigate the sanctions issue would be insufficient to deter future similar conduct by counsel. I noted the court's inherent authority to sanction any party or counsel for abuse of the litigation process, and I ordered counsel to show cause why they should not be fined $500. *Id.*

Counsel has responded, stating that sanctions are not warranted given the rigorous standard that courts must apply in considering them. Dkt. 120. The court "may impose sanctions under its inherent authority 'where a party has willfully abused the judicial process or otherwise conducted litigation in bad faith.'" *Fuery v. City of Chicago*, 900 F.3d 450, 463 (7th Cir. 2018) (quoting *Tucker v. Williams*, 682 F.3d 654, 661–62 (7th Cir. 2012). "Because these inherent powers are potent, they must be exercised with caution and restraint." *Schmude v. Sheahan*, 420 F.3d 645, 650 (7th Cir. 2005). Before issuing sanctions I must "first make a finding of 'bad faith, designed to obstruct the judicial process, or a violation of a court order.'" *Id.* (quoting *Tucker*, 682 F.3d at 662). Notably, and what saves counsel here, is that "[m]ere clumsy lawyering is not enough." *Id.* at 464.

Counsel states that they did not recognize the logical discrepancy with Kartman's original declaration—that Kartman had stated in his declaration that he had preserved the video in response to Khan's long-belated second request, even though Kartman's answer to that request stated that the video "was previously preserved." Dkt. 77-2. Counsel states that they did not appreciate this contradiction at the time, saying that they took Kartman's statement that the vestibule video was "previously preserved" to be "imprecise language that simply meant that [Kartman] had taken steps to preserve the vestibule video before responding to the request slip." Dkt. 120, at 5. Counsel adds that Khan himself did not dispute Kartman's original account, otherwise note the hole in Kartman's testimony, or raise the fact that he had filed another preservation request only days after his first request.

Khan's failure to note the discrepancy himself does not absolve counsel from their responsibility to produce accurate evidence. Part of that duty is clearing up imprecise language to avoid ambiguity. And in any event, Kartman's original declaration wasn't just ambiguous: it was obviously contradictory. Counsel should have noticed the problem and followed up with Kartman before filing his original declaration. Their failure to do so wasted the court's and Khan's time and resources.

In ordering counsel to show cause why they should not be fined, I also criticized counsel's eve-of-hearing filing of Kartman's amended declaration fixing the discrepancy, stating that "it was completely unnecessary to go through the time and expense of holding the . . . hearing because Kartman's supplemental declaration sufficiently explained how the vestibule video was preserved and the hallway video was destroyed." Dkt. 115, at 3. Counsel states that they "did not anticipate that the Court would find that Kartman's amended declaration rendered the hearing unnecessary," arguing that the hearing allowed the court and Khan to

inquire more deeply into the circumstances regarding preservation of the vestibule video and destruction of the hallway video. Dkt. 120, at 8–9.

Counsel underestimates the impact of the belatedly-located request to preserve footage. Given the incomplete information in Kartman's initial contradictory declaration, the prison's preservation of the vestibule footage without a valid request to do so suggested that Kartman or other officials were aware that they had the obligation to preserve all relevant footage of Khan's suicide attempt, which raised the question why they hadn't also preserved the hallway footage. Kartman's amended declaration, along with Khan's documented request to preserve footage made about ten days after the incident, removed any reasonable ambiguity about staff's preservation efforts.

Counsel discusses their workloads during the events in question and I am already aware of the significant caseloads that assistant attorneys general are responsible for. That may explain—but does not excuse—some of their lack of attention to detail with regard to Kartman's original declaration and their tardiness in fixing the problem. Nonetheless, counsel has convinced me that their sloppiness here was not the type of willfully abusive or defiant conduct warranting sanctions under the court's inherent authority, but rather negligence on their part. *Maynard v. Nygren*, 332 F.3d 462, 471 (7th Cir. 2003) ("[t]here is no authority under the Rules or under the inherent powers of the court to sanction attorneys for mere negligence"), *overruled on other grounds by Ramirez v. T&H Lemont, Inc.*, 845 F.3d 772 (7th Cir. 2016).

Counsel adds that the spoliation hearing was ultimately useful because they invited Department of Corrections officials to listen in on the hearing and that those officials have vowed to train staff more thoroughly on video preservation procedures. The

preservation-request system detailed in this case—in which some requests are placed into an electronic filing for easy recall while others are not—seems to be at the core of the problem. I encourage counsel and DOC staff to rethink that procedure.

ORDER

IT IS ORDERED that plaintiff Amir J. Khan's renewed motion for sanctions, Dkt. 101, is DENIED with respect to sanctions under this court's inherent authority.

Entered September 14, 2022.

BY THE COURT:

/s/

JAMES D. PETERSON
District Judge